UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY JOAQUIN SILVEIRA III, | No. 2:19-cv-933-KJN |
| Plaintiff, | ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT |
| v. | (ECF Nos. 18, 23) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title II of the Social Security Act.[1] In his summary judgment motion, plaintiff contends the Administrative Law Judge erred in assigning a "light" RFC with a "sit/stand at will" option, because that is essentially sedentary work. Plaintiff also contends the ALJ erred in rejecting his subjective-symptom testimony, and in ignoring the rating decision of the Department of Veterans Affairs. The Commissioner opposed, and filed a cross–motion for summary judgment.

The court GRANTS IN PART plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion, and REMANDS for an award of benefits.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15). Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes. (ECF Nos. 8, 11, 25.)

1

# I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

On October 30, 2017, plaintiff applied for Disability Insurance Benefits, alleging an onset date of October 17, 2016. (Administrative Transcript ("AT") 15, 143-44.) Plaintiff stated he was disabled due to information on his Veterans Affairs report and because of a bi-ventricular defibrillator. (AT 80.) Plaintiff's application was denied initially and again upon reconsideration. (AT 58-67; 69-78.) Plaintiff, aided by an attorney, sought review of these denials with an Administrative Law Judge ("ALJ"). (AT 91.) The ALJ held a hearing on September 12, 2018, where plaintiff testified about his conditions. (AT 28-57.)

On November 20, 2018, the ALJ issued a decision determining that plaintiff was not disabled from his onset date onward. (AT 15-23.) As an initial matter, the ALJ determined that plaintiff met the insured status requirements through December of 2022. (AT 17.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 17, 2016. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: non-iscemic cardiomyopathy heart failure, left pes planus, diabetes, and hypertension. (Id.) The ALJ found plaintiff's COPD and small hiatal hernia to be non-severe. (AT 18.) At step three, the ALJ determined plaintiff's impairments did not meet or medically

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:
> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1  equal the severity of an impairment listed in Appendix 1. (Id.) (citing 20 C.F.R. Part 404, Subpart
2  P, Appendix 1).

3        The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform light
4  work, except he could "[o]ccasionally climb[] ramps/stairs and ladders/ropes/scaffolds . . .,
5  frequently balance and occasionally stoop, kneel, crouch, [and] crawl . . ., should avoid even
6  moderate exposure to wet or humid environment[s]" and "would require a sit/stand option
7  permitting sit/stand at will." (AT 18.) In reaching this conclusion, the ALJ stated he considered
8  those of plaintiff's symptoms that were consistent with the medical evidence and opinions of
9  plaintiff's doctors. (AT 18-21.) The ALJ then considered the interrogatories of a vocational
10 expert, who considered the ability of a person with plaintiff's limitations to perform various
11 occupations. (AT 21-22.) The ALJ concluded at step four that plaintiff was able to perform past
12 relevant work as a floor attendant and office machine servicer. (Id.) Alternatively, the ALJ found
13 other jobs in the national economy that plaintiff could perform. (AT 22-23.) Thus, the
14 Commissioner determined plaintiff was not disabled. (AT 23.)

15       Plaintiff then filed this action requesting judicial review of the Commissioner's final
16 decision; the parties filed cross–motions for summary judgment. (ECF Nos. 1, 18, 23, 24.)

17 **II.     LEGAL STANDARD**

18       The court reviews the agency's decision de novo, and should reverse "only if the ALJ's
19 decision was not supported by substantial evidence in the record as a whole or if the ALJ applied
20 the wrong legal standard." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017). Substantial
21 evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence
22 as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari,
23 253 F.3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility,
24 resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold
25 the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation."
26 Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse
27 the ALJ's decision on account of harmless error. Buck, 869 F.3d at 1048.
28 ///

III. **ISSUES PRESENTED**

Plaintiff primarily argues the ALJ erred in avoiding the assignment of a "sedentary" RFC by assigning plaintiff to "light" work with a "sit/stand at will" option. He also contends the ALJ failed to provide clear and convincing reasons for discrediting plaintiff's symptom testimony, failed to consider plaintiff's 60% disability finding from Veterans Affairs ("VA"). (ECF No. 18 at 5-10.) Plaintiff seeks a remand for benefits. (Id. at 18.)

The Commissioner disagrees, arguing that plaintiff mischaracterizes the RFC as sedentary by ignoring the VE's testimony. The Commissioner also argues the ALJ provided valid reasons to discount plaintiff's subjective symptom testimony, including the objective medical evidence, his conservative treatment, and conflicts between his testimony and the medical opinion evidence, and was not required to discuss the VA's disability determination under current regulations. (ECF No. 23.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence, which should result in affirmance. (Id.) Alternatively, the Commissioner argues that any finding for plaintiff should result in remand for further proceedings. (Id.)

IV. **DISCUSSION**

**A. A "light" work RFC is inconsistent with plaintiff's "sit/stand at will" limitation.**

Plaintiff challenges the ALJ's formulation of an RFC permitting light work with, among other limitations, a "a sit/stand option permitting sit/stand at will." (AT 18.) The ALJ based this portion of the RFC on the findings of the two state-agency physicians who reviewed plaintiff's case at the initial and reconsideration stages (AT 58-67; 69-78), as well as on a report by plaintiff's podiatrist, Dr. Kazak (AT 1026-27). The two state-agency doctors assigned an RFC of "light" work, which the physicians opined allowed plaintiff to stand and walk for "about 6 hours in an 8-hour workday." (AT 64, 75.) The ALJ found these two opinions persuasive, and adopted both the "light" designation and many of the proposed limitations. (AT 21.) However, the ALJ also noted Dr. Kazak's more-recent finding (filed after the state-agency physicians reviewed plaintiff's case) of plaintiff's "left pes planus/flat foot with fat pad atrophy and pain." (Id., citing AT 1026-27.) Dr. Kazak stated this condition would get "worse with increased standing and walking." (Id.) Dr. Kazak's notes stated:

> Explained [to plaintiff] that in light of neuropathy, history of ulcer formation and prolonged healing, he is at risk for developing lower extremity neuropathic ulcerations. Explained that he should avoid prolonged standing and walking as these can lead to skin breakdown without him noticing it. The skin break down/ulceration may lead to amputation and limb loss. Explained that this condition is unlikely to improve. Encouraged to continue with daily foot checks.

In light of Dr. Kazak's opinion, the ALJ "added a sit/stand option" to plaintiff's RFC. (AT 21.)

Plaintiff's claim is, essentially, that a "sit/stand at will" restriction is incompatible with a light RFC. Plaintiff argues that, because his podiatrist recommended avoiding "prolonged standing and walking"—a recommendation the ALJ accepted—an RFC with a "sit/stand at will" restriction necessarily makes him only eligible for sedentary work. Plaintiff argues that this matters because if he is classified under a sedentary RFC, the regulations dictate he must be found disabled due to his advanced age, education and unskilled work experience. See 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(g) ("Individuals approaching advanced age (age 50–54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals . . . can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."). Thus, plaintiff contends that the ALJ's assigning a "light" RFC with this significant exertional restriction deprived him of a disability finding at sedentary. Based on the applicable federal regulations and social security rulings ("SSR"),[3] the undersigned agrees.

The relevant portion of the code of federal regulations describes light work as requiring "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567. By contrast, the same C.F.R. describes sedentary work as primarily involving sitting, and notes that "[j]obs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." Further, SSR 83-10 describes in greater detail the amount of sitting, standing, and walking required for sedentary and light work, as codified in Section 404.1567. For sedentary exertional levels, 83-10 states:

---

[3] "Social Security Rulings do not carry the 'force of law,' but they are binding on ALJs nonetheless. They reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Diedrich v. Berryhill, 874 F.3d 634, 638 (9th Cir. 2017)

> Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.

SSR 83-10: "Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational Rules of Appendix 2," (S.S.A. 1983).  Conversely, this Ruling describes light exertional levels as:

> [A] job is in [the light] category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs.
> ***
> [T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

Under the facts of plaintiff's case, an exertional restriction of "sit/stand at will" is akin to "sedentary" work under this SSR—and certainly nowhere near being able to be on one's feet for 6 hours of a workday.  The undersigned is further persuaded by dispositions equating a similar exertional limitation to sedentary work.  See, e.g., McClure v. Comm'r, 2016 WL 4628049, at *7 (S.D. Cal, Aug. 9, 2016) ("[where plaintiff was] limited to standing or walking for no more than two hours in an eight-hour day . . ., the ALJ's RFC determination is inconsistent with the definition of light work.") (citing Campbell v. Astrue, 2010 WL 4689521, at *5 (E.D. Pa. Nov. 2, 2010) (finding the ALJ's characterization of plaintiff's exertional capabilities as "light work" to be incongruent with the particularized finding of standing/walking limitation); see also, e.g., Buckner-Larkin v. Astrue, 450 Fed. Appx. 626 (9th Cir. 2011) ("Her RFC also included a sit-stand option, which is most reasonably interpreted as sitting or standing 'at-will,' based on the record."); Perez v. Astrue, 250 Fed. Appx. 774, 776 (9th Cir. 2007) ("The need to sit and stand at will is incompatible with the ability to either sit or stand for six hours in an eight-hour workday.").

      The Commissioner argues that the ALJ appropriately resolved the conflict between an RFC of light work (requiring 6 hours of standing and walking in a work day) and the exertional "sit/stand at will" limitation by submitting the matter to the Vocational Expert ("VE").  The Commissioner cites to Moore v. Apfel, which does indeed reinforce the principle that "when a

1  claimant falls between [a light and sedentary] grid, consultation with a VE is appropriate." 216
2  F.3d 864, 870 (9th Cir. 2000); see also Distasio v. Shalala, 47 F.3d 348 (9th Cir. 1995)
3  (discussing jobs that fall between two grids as "something along the lines of 'light-minus' or
4  'sedentary-plus.'"); SSR Ruling 83-12 (advising the assistance of a VE in cases where the
5  claimant's exertional restrictions places him "somewhere in the middle").  Thus, the
6  Commissioner argues that when the ALJ believed plaintiff could not do the full range of light
7  work due to the sit/stand at will limitation, consultation with the VE was required in order to
8  determine whether there were jobs that plaintiff could perform.  (See AT 22.)  Here, the VE's
9  interrogatory stated that plaintiff would be able to perform his past relevant work as a floor
10 attendant "when adjusting for the sit/stand option."  (Id.)  The ALJ also noted that, in an
11 alternative step-five finding, plaintiff could perform the duties of a Cashier II, with 427,000
12 positions in the national economy "with 50% erosion due to sit/stand option."  (AT 23.)

13         The undersigned does not dispute that if this were a case of "light-minus," the ALJ's
14 approach would be appropriate under Moore—as has been the result in so many other cases in the
15 Ninth Circuit.  See also SSR 83-12 ("In situations where . . . the individual's exertional limitations
16 are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work,
17 more difficult judgments are involved as to the sufficiency of the remaining occupational base to
18 support a conclusion as to disability.  Accordingly, [VE] assistance is advisable for these types of
19 cases.").  For example, the Commissioner cites to Watts v. Astrue, where the ALJ's appending of
20 a sit/stand option to a light-work RFC "mandated the use of a VE."  2010 WL 1854075, at *6
21 (C.D. Cal. 2010).  However, the difference between plaintiff's case and cases like Moore and
22 Watts lies in the amount of time those claimants can spend on their feet.  In Moore, the plaintiff's
23 exertional limitations put him somewhere between light and sedentary, and so the Ninth Circuit
24 held the VE's expertise was required, given the likely erosion in jobs for someone able to do less
25 than a full complement of light work.  216 F.3d at 870-71.  Similarly, in Watts, the plaintiff's
26 exertional limitation required "periodic" alternating of sitting and standing for an RFC that
27 allowed for up to 6 hours of standing/walking time.  2010 WL 1854075, at *3.  Thus, these cases
28 illustrate how the VE can help resolve a claimant's ability to work in those "middle" situations.

7

But plaintiff's case is not one of "light-minus."  Given the restriction to sit/stand *at will*, which is based on Dr. Kazak's recommendation that plaintiff be off his feet as much as possible or risk possible *amputation*, it was error to deem plaintiff's RFC as anything other than sedentary. See, e.g., McClure, 2016 WL 4628049 at *7 (finding the ALJ's acceptance of the plaintiff's severe mobility limitations corresponded with "occasional" standing/walking, which was "inconsistent with the definition of light work."); see also, e.g., Buckner-Larkin, 450 Fed. Appx. at 626; Perez, 250 Fed. Appx. at 776.  Thus, Moore and Watts are simply inapposite, as under a sedentary RFC the issue would have resolved under the "Grids," and would not have required the assistance of a VE.  See Rule 201.14 (Appendix 2 to Subpart P of Part 404—Medical-Vocational Guidelines) (requiring the entry of "disabled" for a person approaching advanced age with a high school education and no transferrable skills).  The ALJ cannot be allowed to dodge a finding of disabled at sedentary by misclassifying plaintiff's RFC as light.

**B. Plaintiff's Other Claims**

Given the finding above regarding the ALJ's misclassification of plaintiff's RFC, plaintiff's remaining points of error are not dispositive.  However, for the sake of thoroughness, they are briefly addressed below.

Plaintiff claims the ALJ did not provide clear and convincing reasons to reject the more restrictive aspects of plaintiff's subjective-symptom testimony.  Regarding plaintiff's testimony of his ability to sit, stand, and walk, the undersigned finds this issue in line with the misclassification issue.  It appears incongruous for the ALJ to accept the opinion of Dr. Kazak—that plaintiff be off his feet or risk amputation, and disregard plaintiff's similar testimony.  Thus, to the extent these issues align, the undersigned finds the ALJ failed to offer clear and convincing reasons to discredit plaintiff's testimony regarding his abilities to stand and walk.  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) ("[T]he ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . The clear and convincing standard is the most demanding required in Social Security cases.") (citing Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

///

It is unclear if plaintiff is challenging the remainder of the ALJ's findings on plaintiff's symptom testimony (concerning his cardiac condition, diabetes, hypertension, and other medical issues). To the extent there is such a challenge, the undersigned finds the ALJ met the clear and convincing standard by relying on the inconsistencies in the medical evidence, conservative treatment, and control with medication. See Tommasetti, 533 F.3d at 1040 (finding examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony to include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, inconsistencies between a claimant's testimony and their conduct, and whether the alleged symptoms are consistent with the medical evidence).

Finally, plaintiff initially challenged the ALJ's failure to address the VA's 60% disability rating. (ECF No. 18.) However, plaintiff conceded that under the new regulations, the ALJ is not bound by any other agency's disability determination. 20 C.F.R. §§ 404.1520b(c) and 1504 (for claims filed after March 17, 2017, another agency's disability determination is "neither valuable nor persuasive," and the ALJ need not provide analysis of that agency's determination). Plaintiff argues in his reply brief that the ALJ was still required to consider the evidence underlying the VA's determination, but the undersigned finds the ALJ met this duty. (See AT 17-18, citing multiple records from the VA).

**C. Remedy**

Plaintiff requests a remand for benefits. Garrison, 759 F.3d at 1020 (noting that a court may remand for benefits if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."). The Commissioner requests that, if the undersigned finds for plaintiff, a remand for further proceedings is appropriate. (ECF No. 23 at 23-24.)

Here, the undersigned sees no utility to further proceedings, as under the Garrison prongs. First, the ALJ accepted Dr. Kazak's report regarding plaintiff's standing/walking limitations, and fashioned an RFC with that limitation in mind. The ALJ also made the requisite findings

regarding plaintiff's age, education, and applicability of previous work experience.  (AT 22, citing Rule 202.14 of the Grids in finding plaintiff approaching advanced age, with a high school education and no transferable skills.)  Thus, there is no further evidence to adduce, and no further findings for the ALJ to make.  Second, the ALJ's error in misclassifying plaintiff's RFC is purely legal.  See Buck, 869 F.3d 1048 (the courts may reverse "if the ALJ applied the wrong legal standard.")  The only error that need be corrected is to apply the applicable grid, C.F.R., and SSR sections to the evidence adduced (as noted in Section A above).  Third, the court credits as true both Dr. Kazak's report (AT 1026-27) and the evidence classifying plaintiff by his age, education and work experience—both of which the ALJ himself credited in crafting the "sit/stand at will" limitation in the RFC and resolving plaintiff's case.  (See AT 22.)

In setting plaintiff's classification as "sedentary," and using Rule 201.14 of the Grids, an entry of "disabled" is required.  For these reasons, the undersigned orders a remand to the ALJ for the calculation and award of benefits.  See, e.g., Horton v. Astrue, 252 Fed. App'x. 160, 161 (9th Cir. 2007) (remanding for an award of benefits where inability to stand/walk was inconsistent with light classification, and where no further evidence need be adduced or interpreted on this issue).

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Commissioner's motion for summary judgment (ECF No. 23) is DENIED;
2. Plaintiff's motion for summary judgment (ECF No. 18) is GRANTED IN PART;
3. The final decision of the Commissioner is REVERSED, and judgment is entered for plaintiff;
4. On REMAND, the agency is instructed to calculate and award benefits; and
5. The Clerk of Court is directed to CLOSE this case.

Dated:  November 10, 2020

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

silv.933